## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

TAMARA D.,[1]

      Plaintiff,

                                    **Case No. 2:23-cv-0026**

   v.                       **Magistrate Judge Norah McCann King**

LELAND DUDEK,[2]
**Acting Commissioner of Social Security,**

      Defendant.

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Tamara D. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final administrative decision denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the decision.

## I.    PROCEDURAL HISTORY

On February 15, 2020, Plaintiff protectively filed an application for disability insurance benefits, alleging that she has been disabled since April 21, 2015. R. 103, 118, 254–57. The

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Leland Dudek, the current Acting Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

application was denied initially and upon reconsideration. R. 164–68, 173–77. Plaintiff sought a

*de novo* hearing before an administrative law judge ("ALJ"). R. 178–80. ALJ Ricardy Damille

held a hearing on December 10, 2021, at which Plaintiff, who was represented by counsel,

testified, as did a vocational expert. R. 36–60. In a decision dated February 8, 2022, the ALJ

concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any

time from April 21, 2015, Plaintiff's alleged disability onset date, through December 31, 2021,

the date on which Plaintiff was last insured for benefits. R. 15–31. That decision became final

when the Appeals Council declined review on November 3, 2022. R. 1–6. Plaintiff timely filed

this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 1, 2023, Plaintiff consented to

disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and

Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.[3] On June 2, 2023, the case was

reassigned to the undersigned. ECF No. 10. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this

standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));

*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists

only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is

overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or

"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of

Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see

K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into

account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.

at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular

format in conducting [the] analysis," the decision must contain "sufficient development of the

record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d

501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

2000)); *see K.K.*, 2018 WL 1509091, at *4. A court "need[s] from the ALJ not only an

expression of the evidence s/he considered which supports the result, but also some indication of

the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication

of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 51 years old on December 31, 2021, *i.e.*, the date on which she was last insured for benefits.. R. 29. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between April 21, 2015, her alleged disability onset date, and the date on which she was last insured. R. 17–18 (explaining that, while Plaintiff worked after her alleged disability onset date, that work activity did not rise to the level of substantial gainful activity).

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: spinal stenosis, osteoarthritis in the back and shoulder, lumbar radiculopathy and degenerative joint disease. R. 18. The ALJ also found that Plaintiff's medically determinable impairments of hyperlipidemia and adjustment disorder with mixed anxiety and depressed mood were not severe. R. 18–20.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 20–21.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 21–29. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a mortgage loan closer, supervisor mortgage loan officer, and executive assistant. R. 28–29.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g*., jobs as a parking lot cashier, a shipping and receiving weigher, and a folder—existed in the national economy and could be performed by Plaintiff despite her lessened capacity. R. 29–30. The ALJ therefore concluded that Plaintiff was not disabled within

the meaning of the Social Security Act from April 21, 2015, her alleged disability onset date, through December 31, 2021, the date on which she was last insured for benefits. R. 30–31.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision be reversed and remanded for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 19; *Plaintiff's Reply Brief*, ECF No. 22. The Acting Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 21.

## IV. SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A. August 7, 2016, MRI of the Lumbar Spine

On August 7, 2016, an MRI was taken of Plaintiff's lumbar spine without contrast. R. 406 ("2016 MRI of the lumbar spine"). The MRI revealed the following findings and impression:

> **FINDINGS**: Again, degenerative disc changes are present at L5-S1, specifically with disc dislocation at this level. When compared to the previous MRI, there is a stable posterior disc bulge at L5-S1, asymmetrically greater in severity on the right than the left, with persistent resultant abutment of the right S1 nerve [illegible] in the spinal [illegible] weighted sagittal image 4 of series 2) and narrowing of the inferior recess of the right neural foramen.
>
> The remaining lumbar disc levels appear unremarkable.
>
> There is no central spine canal stenosis in the lumbar spine.
>
> The lumbar facet joints are preserved. Lumbar vertebral body height and signal are maintained. The conus is normal in position and configuration.
>
> There is a retroverted uterus.
>
> **IMPRESSION**: Stable posterior disc bulge at L5-S1, asymmetrically greater in severity on the right than the left, [illegible] persistent resultant abutment of the right S1 nerve root in the canal and narrowing of the inferior recess of the right neural foramen.

*Id*.

8

### B.    March 26, 2019, Pelvic Ultrasound

On March 26, 2019, a complete transabdominal and transvaginal pelvic ultrasound was

taken, which revealed the following findings and impression:

> **FINDINGS**: The uterus is retroverted and at the upper limits of normal in overall
> size, measuring 10.6 x 5.6 x 5.6 cm. There is a 3.8 cm exophytic fibroid in the
> posterior fundus on the left. There is a 1.5 cm subserosal fibroid in the body of
> uterus on the right and there is a 1.6 cm intramural fibroid in the posterior body.
> These are all essentially unchanged when compared with the previous exam. There
> is an unremarkable 1 cm endometrial stripe. The cervix is unremarkable.
>
> The right ovary measures 3.3 cm and the left measures 3.6 cm. No cystic or solid
> adnexal masses are seen. No free fluid is seen in the pelvis.
>
> **IMPRESSION**: Borderline-enlarged retroverted uterus containing 3 stable fibroids
> measuring 3.8, 1.6 and 1.5 cm on the current exam. Unremarkable endometrial
> stripe. No adnexal abnormalities.

R. 404 ("2019 pelvic ultrasound").

### C.    January 30, 2020, MRI of the Lumbar Spine

On January 30, 2020, an MRI was taken of Plaintiff's lumbar spine without contrast. R.

402 ("2020 MRI of the lumbar spine"), 639 (duplicate). This MRI revealed the following

findings and impression:

> **FINDINGS**: The vertebral body heights are preserved. There is desiccation of the
> L5-S1 disc. The disc heights are preserved. There is no evidence of focal bone
> marrow signal abnormality. Mild lower lumbar facet arthropathy and hypertrophic
> changes noted. *The conus medullaris is within normal limits*.
>
> At L 1-2, no significant abnormalities are seen.
>
> At L2-3, no significant abnormalities are seen.
>
> At L3-4, no significant abnormalities are seen.
>
> At L4-5, no significant abnormalities are seen.
>
> At L5-S1, mild diffusely bulging disc is noted contacting the S1 nerve roots
> bilaterally. Small right paracentral annulus fissure is noted. There is no significant
> central stenosis. Mild bilateral foraminal narrowing noted.

**IMPRESSION**:

*Mild diffusely bulging disc at L5-S1 probably without significant interval change. Mild bilateral foraminal narrowing also noted at L5-S1.*

*Id*. (emphasis added)

### D.    Eddy Simon, M.D.

On March 2, 2020, Eddy Simon, M.D., Plaintiff's treating physician, completed a four-page, check-the-box, and fill-in-the-blank form entitled, "Residual Functional Capacity Questionnaire." R. 412–15 ("March 2020 opinion"). Dr. Simon diagnosed lumbar radiculopathy and degenerative joint disease. R. 412. Asked to describe Plaintiff's symptoms, Dr. Simon responded that Plaintiff complained of "lower back pain associated with inability to stand or sit for a long time[.]" *Id*. He affirmed that Plaintiff experienced chronic pain/paresthesia and described Plaintiff's pain as "paraspinal and [illegible] lumbar tenderness to palpation[;] straight leg raising[.]" *Id*. Asked to identify the objective signs exhibited by Plaintiff, Dr. Simon checked boxes indicating spasms, abnormal posture, trigger points, joint tenderness, and positive straight leg test. *Id*. According to Dr. Simon, these limitations first appeared on April 5, 2015, and were expected to last for 12 months or longer. *Id*. Dr. Simon affirmed that Plaintiff's physical and emotional impairments were reasonably consistent with her symptoms and functional limitations, and stated that Plaintiff's anxiety affected her pain, which "is exacerbated by anxiety[.]" *Id*. Asked to identify any positive clinical findings and test results, Dr. Simon responded: "Patient had MRI of lumbar spine which confirmed the reason of her pain[.]" R. 413. According to Dr. Simon, Plaintiff took medication and participated in physical therapy three times per week. *Id*. Plaintiff's prognosis was poor. *Id*. Dr. Simon opined that Plaintiff's pain or symptoms were severe enough to constantly interfere with her attention and concentration necessary to perform

simple work tasks; that she was incapable of even "low stress" jobs; and that Plaintiff could walk without rest for less than a quarter mile without experiencing pain. *Id*. Plaintiff could sit comfortably for 10 minutes at a time before needing to get up and stand or walk and that she could stand comfortably for 15 minutes at a time before needing to sit or walk. R. 413–14. In an eight-hour day, Plaintiff could sit for less than 2 hours; could stand and/or walk for less than two hours; and would need to include periods of walking every 10 minutes for a period of 5 minutes. R. 414. According to Dr. Simon, Plaintiff required a job that allows the opportunity to change between sitting, standing, and walking at will; would allow her to take unscheduled breaks to sit quietly for 15 to 20 minutes; would not require "prolonged sitting"; would never require lifting or carrying less than 10 pounds, and would never require twisting, stooping (bending), crouching, climbing ladders, or climbing stairs. *Id*. Plaintiff had no significant limitations with repetitive reaching, handling, or fingering. R. 415. According to Dr. Simon, Plaintiff's impairments were likely to produce 'good days' and 'bad days' and she was likely to be absent from work more than four days per month as a result of her impairments or treatment. *Id*. Asked to describe any other limitations that might affect Plaintiff's ability to work at a regular job on a sustained basis, Dr. Simon responded: "Patient is unable to sit or stand for prolonged period of time[.]" *Id*. Asked to describe additional tests or clinical findings not described on the form that "clarify the severity of" Plaintiff's impairments, Dr. Smith stated, "Patient has had MRI and was evaluated by orthopedist as well[.]" *Id*.

On June 30, 2020, Dr. Simon completed another "Residual Functional Capacity Questionnaire[,]" R. 478–81 ("June 2020 opinion"), which identified the same findings, symptoms, diagnoses and opinions as were identified in his March 2020 opinion. R. 478-81.

## V.    DISCUSSION

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to properly consider Dr. Simon's opinions. *Plaintiff's Memorandum of Law*, ECF No. 19; *Plaintiff's Reply Brief*, ECF No. 22. For the reasons that follow, Plaintiff's arguments are not well taken.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter,* 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[4] the applicable regulation eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any

---

[4] As previously noted, Plaintiff's claim was filed on February 15, 2020.

medical opinion(s) or prior administrative medical finding(s), including those from [the

claimant's] medical sources"). Instead, the Commissioner will consider the following factors

when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with

the claimant, including the length of the treating examination, the frequency of examinations,

and the purpose of the treatment relationship; (4) the medical source's specialization; and (5)

other factors, including, but not limited to, "evidence showing a medical source has familiarity

with the other evidence in the claim or an understanding of our disability program's policies and

evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The applicable regulation emphasizes that "the most important factors [that the ALJ and

Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior

administrative medical findings are supportability (paragraph (c)(1) of this section) and

consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability

factor, the regulation provides that "[t]he more relevant the objective medical evidence and

supporting explanations presented by a medical source are to support his or her medical

opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions

or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1).  As to the

consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or

prior administrative medical finding(s) is with the evidence from other medical sources and

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior

administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The applicable regulation further requires the ALJ to articulate his or her "consideration

of medical opinions and prior administrative medical findings" and articulate in the

"determination or decision how persuasive [he or she] find[s] all of the medical opinions and all

13

of the prior administrative medical findings in [the claimant's] case record." *Id.* at §

404.1520c(b). As previously noted, "[s]upportability and consistency are the most important

factors. . . . ALJs need not explain their determinations regarding the other factors, but they must

discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa.

2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021)

("Generally, the ALJ may, but is not required to, explain his or her consideration of the other

factors, but if there are two equally persuasive medical opinions about the same issue that are not

exactly the same, then the ALJ must explain how he or she considered the other factors.").

At step four of the sequential evaluation process in this matter, the ALJ determined that

Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, I find that, through the date last
> insured, the claimant had the residual functional capacity to perform light work as
> defined in 20 CFR 404.1567(b) except she can stand and/or walk for no more than
> 4 hours in an 8-hour day. She can occasionally climb ramps and stairs but can never
> climb ladders, ropes or scaffolds. She can occasionally balance, kneel, stoop and
> crouch, but can never crawl. She can frequently handle, finger and feel with the
> hands. She is able to understand, remember and carry out simple instructions.

R. 21. In reaching this decision, the ALJ considered years of medical and other record evidence,

including, *inter alia*, imaging and lab results that "showed no major abnormalities[,]" such as the

2016 and 2020 MRIs of the lumbar spine and the 2019 pelvic ultrasound; evidence that, on

March 25, 2019, Plaintiff presented to Dr. Simon, complaining of sciatica pain, but stating that

she "felt well and denied any new complaint"; Dr. Simon's physical examination which

revealed, among other things, a mostly normal review of systems, with normal extraocular

movements, normal heart rate, normal breathing sounds, normal mood and affect, full range of

motion in her back without costovertebral angel tenderness, tenderness to palpation, cyanosis,

edema, or clubbing; had full range of motion in her neck, cervical spine and extremities, intact

cranial nerves and a normal lumbosacral spine; finding that she was alert, oriented, cooperative and had good insight and judgment with intact sensation, normal pulses, and no lymphadenopathy, masses, guarding, rigidity, or hepatosplenomegaly; Dr. Simon's advice that Plaintiff diet, exercise, and continue taking Vitamin D, but that no further treatment was recommended; evidence that, on April 16, 2019, Plaintiff presented to Dr. Simon and "continued to report that she was feeling well, and she denied having any new complaints"; Dr. Simon prescribed medication but recommended no further treatment; evidence that, on November 25, 2019, Plaintiff presented to Dr. Simon, complaining that she had pain all over her body, but denied experiencing palpations, headaches, anxiety, depression, mood swings, foot numbness, swelling, or dizziness; Dr. Simon's physical examination revealed a mostly normal review of systems, with full range of motion in her spine and extremities, normal pulses and intact cranial nerves; Dr. Simon advised Plaintiff to diet and exercise and to continue her prescription protocol; evidence that, on February 3, 2020, Plaintiff reported to Dr. Simon that she felt well; evodemce that Plaintiff presented again to Dr. Simon on July 13, 2020, complaining of chronic pain for the prior six years in her lumbosacral to right lower leg to right foot and reporting a rash on her right foot; Plaintiff reported that she was able to independently clothe, bathe, and dress herself and that she could shop, prepare food and do laundry; she denied experiencing depression, denied having little energy, and denied trouble concentrating; upon physical examination, Dr. Simon noted mostly normal review of systems, with no cervical lymphadenopathy, thyromegaly, palpable adenopathy, tenderness, lesions, masses, rales, wheezing, organomegaly or masses; Plaintiff had full range of motion in her back and extremities, and no spinal tenderness, cyanosis, edema, or focal deficits were noted; Dr. Simon again advised Plaintiff to diet and exercise, to apply cream to her rash, to continue physical therapy, and to take Ibuprofen; he recommended no

further treatment; physical therapy notes from July 2020 reflected that Plaintiff had tolerated the

therapy with minimal complaint; notes from August 2020 reflected that Plaintiff had improved

with treatment and had tolerated the exercises without adverse effects; evidence that Plaintiff

presented to Betty Vekhnis, M.D., for an orthopedic examination on September 23, 2020,

complaining of lower back pain for several years, and that injections had made her pain worse,

but admitting that physical therapy had been helpful and she was able to independently perform

activities of daily living; upon examination, Dr. Vekhnis noted that Plaintiff ambulated without

an assistive device, had a normal heel/toe gait and was able to walk on her heels and squat;

Plaintiff had full range of motion in her cervical spine, negative Spurling maneuver bilaterally

and no vertebral tenderness and paraspinal spasm in her cervical spine; although she had

decreased range of motion in her lumbar spine, she had no vertebral tenderness or paraspinal

spasm in her lumbar spine and her straight leg raising was negative in both the supine and sitting

positions; Plaintiff also had non-tender range of motion in her shoulders, elbows, wrists, hands,

hips, knees and ankles without focal weakness or sensory loss; she had normal deep tendon

reflexes in her knees and ankles with normal reflexes and no muscle weakness in her extremities

or muscle areas;  and she had normal functioning of her hands for fine and gross motor

manipulations and  5/5 grip and pinch strength with the ability to oppose her fingers and she was

able to separate papers and button buttons; evidence that, in October 2020, Plaintiff reported to

Dr. Simon that she had pain; evidence that, in November 2020, Dr. Simon recommended only

that Plaintiff continue her prescription protocol; evidence that, on March 10, 2021, Plaintiff

presented to Oscar Reichner, M.D., reporting that her back pain radiated throughout her body;

she advised Dr. Reichner that spinal surgery had been recommended; upon physical examination,

Dr. Reichner noted that Plaintiff continued to have a mostly normal review of systems, with

normal muscle strength, normal range of motion in her ankles, knees, and hips and no tenderness or swelling; Plaintiff had normal sensation and pulses, negative drawer, McMurray, Faber or Varus testing and no erythema or scarring; she had tenderness in her cervical, lumbar, sacroiliac and thoracic spine with diffuse pain and decreased range of motion with extension and flexion, but she had normal range of motion with lateral bending and rotation and negative straight leg raising, normal reflexes, and normal muscle strength in her back; Plaintiff had a normal heel/toe walk and a normal gait with full range of motion in her cervical spine without pain or distress, normal strength in her upper and lower extremity muscles and normal pulses in her hands as well as a normal mood and affect, normal finger to nose movement and normal rapid alternating movements in her extremities; Dr. Reichner advised that, due to the absence of significant neurological deficits, only conservative treatment was appropriate; the doctor specifically advised that Plaintiff take NSAIDs and use heat and ice; the doctor referred Plaintiff to additional physical therapy; Plaintiff was also advised to consult a rheumatologist and neurologist, but no more aggressive form of treatment was recommended; evidence that, on April 22, 2021, Plaintiff presented to Aung Aye, M.D., a rheumatologist, complaining of pain symptoms, but also stating that her medications had provided her with some relief and that the use of Duexis provided her some improvement; upon examination, Dr. Aye noted a mostly normal review of systems, with full range of motion throughout Plaintiff's musculoskeletal system, and no adenopathy, swelling, tenderness or synovitis; Plaintiff had 5/5 muscle strength in all four extremities, and no back tenderness, bursitis, tendinitis, edema or clubbing; Dr. Aye advised that Plaintiff continue taking vitamins and to engage in regular weight bearing exercises and recommended low dose Naltrexone assuming no allergy to the ingredients; evidence that Plaintiff returned to Dr. Aye on June 3, 2021, reporting continued pain in her right shoulder and

17

leg; she also stated that she had back pain and that manipulations in physical therapy had made her pain worse, but that her symptoms were stable, and she had less pain affecting her left side and had transient relief through massage; she denied experiencing fatigue, weight loss, visual changes, sicca symptoms, headaches, rashes, weakness, or sleep difficulties; upon physical examination, Dr. Aye noted soft tissue tenderness but an otherwise mostly normal review of systems, with full range of motion throughout the musculoskeletal system, normal curvature in the back and no tenderness, effusion, synovitis or spinous processes; Plaintiff had normal muscle strength in her extremities, normal affect and no focal weakness, clubbing, edema or adenopathy; Dr. Aye advised Plaintiff to use a massage device, to continue her prescription protocol and to regularly exercise, but the doctor recommended no further treatment. R. 22–26.

In crafting the RFC, the ALJ also expressly considered Dr. Simon's opinions, but found them unpersuasive, explaining as follows:

> The claimant's treating physician Eddy Simon, MD submitted two reports (Exhibit B2F: Exhibit B5F). He opined the claimant's pain would constantly interfere with her ability to maintain attention and concentration and could sit for 10 minutes before having to stand up (Exhibit B2F page 2). He opined she could stand for 15 minutes before having to sit or walk, could sit for less than 2 hours in an 8-hour workday and could stand and/or walk for less than 2 hours in an 8 hour workday (Exhibit B2F page 3: Exhibit B5F page 2). He opined the claimant would need to walk for 5 minutes every 10 minutes, would need to take unscheduled breaks and would need to elevate her legs (Exhibit B2F page 3). Dr. Simon opined the claimant could never lift or carry less than 10 pounds, could never perform postural activities and would be absent more than four days per month (Exhibit B2F pages 3–4: Exhibit B5F pages 3-4).

> This opinion is unpersuasive. The number of symptoms and limitations reported here have no support in this provider's contemporaneous treatment notes, which do not reflect the claimant's report of these symptoms or limitations. This provider has provided nothing but the most routine and conservative care and in no way has he provided a level of care that would be necessitated by impairments so severe as to satisfy these limitations. The extreme limitations were also offered without any real explanation. Pursuant to 20 CFR 404.1520c, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to

support his or her medical opinion(s) the more persuasive the medical opinions will be." Conversely, when a medical opinion lacks such relevant supporting explanations, it cannot be said to be supported and, as it is lacking in that support, cannot be said to be persuasive. Furthermore, Dr. Simon's opinions are not supported by his own examination notes, which are generally benign and routinely showed that the claimant had a mostly normal review of systems on examination (Exhibit B6F page 6: Exhibit B1F page 2). He also continued to recommend only routine and conservative treatment of medication management and physical therapy to treat the claimant's symptoms (Exhibit B11F page 6). Additionally, Dr. Simon's opinions are inconsistent with the other objective evidence in the record, which showed the claimant routinely had a mostly normal review of her musculoskeletal systems during other examinations (Exhibit B10F page 2: Exhibit B16F page 2). Furthermore, she recently reported that her pain symptoms were stable or adequately controlled with medication management (Exhibit B16F page 1). Additionally, the claimant's imaging results showed no major abnormalities (Exhibit B1F page 70: Exhibit B4F page 25). Therefore, this opinion is found to be unpersuasive.

R. 27–28. In considering Plaintiff's subjective complaints, R. 21–22, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 22; *see also id*. (finding that "the objective diagnostic imaging, treatment history and lab reports do not support" Plaintiff's subjective allegations), 26 ("These findings suggest that the claimant's symptoms are not as limiting as alleged, and the residual functional capacity should accommodate her conditions to avoid an exacerbation of her symptoms."). The ALJ went on to further explain the RFC limitations based on the record evidence, explaining as follows:

Based on the entire record, including the testimony of the claimant, it is concluded that the medical records do not support the claimant's self-imposed limitations. Despite the evidence demonstrating that the claimant has suffered from medically determinable severe impairments, the evidence also establishes the claimant retains the capacity to function adequately to perform many basic activities associated with work. The above residual functional capacity assessment is supported by the objective medical evidence contained in the record. Examinations in the record do

19

not sustain the claimant's allegations of disabling limitations. Further, the objective medical tests and studies do not support the allegations of disabling limitations.

The claimant testified that her musculoskeletal pains were the primary reasons she could not work. She testified to having constant, debilitating pain symptoms that limited her ability to perform activities of daily living, such as lifting, walking, sitting and standing. She stated that she had pain in her hands and shoulder. She stated that she had pain that made it hard for her to concentrate or focus. She stated that her symptoms caused severe fatigue and trouble stooping and bending. However, the evidence in the record showed that she received only routine and conservative treatment of medication management and physical therapy to treat her symptoms (Exhibit B1F page 8). No more aggressive form of treatment was recommended or required. Furthermore, the claimant routinely had a mostly normal review of her musculoskeletal systems on examination, with normal gait, mostly normal range of motion, normal sensation and normal motor findings (Exhibit B10F page 1: Exhibit B12F page 5). Furthermore, she recently reported that her symptoms [were] stable or were adequately controlled with medications (Exhibit B16F page 1). Additionally, her imaging and lab results routinely showed no major abnormalities (Exhibit B1F page 66, page 70). She also routinely denied experiencing anxiety, trouble concentrating, suicidal or homicidal ideations (Exhibit B1F page 9, page 28 and page 44: B6F page 5). In sum, the claimant does experience some limitations, but only to the extent described in the residual functional capacity above.

R. 28; *see also* R. 26 ("Such findings relative to the claimant's physical impairments support a limitation to the range of light work found above. However, greater limitations are not warranted by the generally normal review of her musculoskeletal systems, the general normal motor findings, the reports of improvement and the routine and conservative treatment she received[.]"). In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554.

Plaintiff, however, argues that substantial evidence does not support the RFC determination because the ALJ erred in considering Dr. Simon's opinions by failing to thoroughly and properly consider the regulatory factors of supportability and consistency. *Plaintiff's Memorandum of Law*, ECF No. 19; *Plaintiff's Reply Brief*, ECF No. 22. Plaintiff first

argues that "the ALJ's supportability analysis is flawed because the ALJ relied upon a

mischaracterization of the record to manufacture support for the ALJ's discrediting

of Dr. Simon's opinions." *Plaintiff's Memorandum of Law*, ECF No. 19, p. 19. Plaintiff contends

that, contrary to the ALJ's finding, Dr. Simon's limitations were supported by evidence within

those opinions as well as by that physician's own examination findings. *Id*. Specifically, Plaintiff

notes that Dr. Simon pointed to clinical findings (spasms, abnormal posture, trigger points, and

paraspinal and spinal lumbar tenderness to palpation and positive straight leg raising), assessed

Plaintiff's prognosis as poor despite physical therapy three times per week and the use of pain

medication, and noted "Plaintiff's MRI of the lumbar spine which 'confirmed the reason of her

pain.'" *Id*. (citing R. 412–13, 418); *see also Plaintiff's Reply Brief*, ECF No. 22, p. 3. Plaintiff

also points to Dr. Simon's January 2018 examination findings that revealed "lumbar tenderness

to palpation as well as a positive straight leg raise at thirty degrees bilaterally"; "decreased

sensation of the lateral aspect of right thigh and calf"; diagnoses of intervertebral disc disorders

with myelopathy, in the lumbar region; hyperlipidemia; other intervertebral disc displacement,

lumbar region; leiomyoma of uterus, unspecified; and vitamin D deficiency, unspecified"; and

recommendation to continue physical therapy. *Plaintiff's Memorandum of Law*, ECF No. 19, pp.

19–20. (citing R. 383, 388 ("January 2018 examination"). Plaintiff's arguments are not well

taken.

The ALJ first explained that he discounted Dr. Simon's opined "extreme limitations"

because they were offered "without any real explanation." R. 27. For example, Dr. Simon stated

that Plaintiff "had MRI of lumbar spine which confirmed the reason of her pain[.]" R. 413, 479

(same). However, this physician never specified the particular MRI to which he referred, nor did

he otherwise explain how such evidence "confirmed" Plaintiff's pain. *See id*. Although it is true

that Dr. Simon also checked boxes and listed certain clinical findings in his opinions, he did not

explain how such findings—spasms, abnormal posture, etc.—supported his extreme limitations,

*i.e.*, requiring unscheduled breaks lasting 15–20 minutes every 10 minutes; never lifting and

carrying less than 10 pounds; and being absent from work more than four days per month. R.

412–15, 478–81.

In any event, the ALJ also reasonably found that these limitations were not supported by

Dr. Simon's "contemporaneous notes, which do not reflect the claimant's report of these

symptoms or limitations[,]" R. 27, and "his own examination notes, which are generally benign

and routinely showed that the claimant had a mostly normal review of systems of

examination[.]" R. 28. The ALJ further explained that Dr. Simon "has provided nothing but the

most routine and conservative care and in no way has he provided a level of care that would be

necessitated by impairments so severe to satisfy these limitations." R. 27; *see also* R. 28 ("He

also continued to recommend only routine and conservative treatment of medication

management and physical therapy to treat the claimant's symptoms."). Dr. Simon's progress

notes and generally benign examination findings detailed above support the ALJ's consideration

and characterization of the evidence in this regard. R. 22–26. The Court therefore finds no error

with the ALJ's evaluation of Dr. Simon's opinions. *See* 20 C.F.R. § 404.1520c(c)(1). *See also*

*Brown v. Comm'r of Soc. Sec.*, No. 4:20-CV-2300, 2022 WL 4080773, at *7 (M.D. Pa. Sept. 6,

2022) ("Conservative treatment can be used as a factor in evaluating medical opinion evidence.")

(citing 20 C.F.R. § 416.920c (c)(3)(iv)); *Crossley v. Kijakazi*, No. 3:20-CV-02298, 2021 WL

6197783, at *11 (M.D. Pa. Dec. 31, 2021) (finding that the ALJ properly evaluated opinions

regarding exertional limitations where the ALJ considered, *inter alia*, physical examinations that

routinely noted the claimant to have normal range of motion, no tenderness, normal strength, no

tremor, no cranial nerve deficit, and normal gait and coordination); *Aponte v. Kijakazi*, No. CV 20-5008, 2021 WL 4963545, at *7 (E.D. Pa. Oct. 25, 2021) (finding that substantial evidence supported the ALJ's finding that a treating opinion was not persuasive under 20 C.F.R. § 404.1520c because it was inconsistent with, *inter alia*, mild findings on "multiple physical examinations" and mild radiographic findings); *cf. Jimenez v. Colvin*, No. 15-3762, 2016 WL 2742864, at *4 (D.N.J. May 11, 2016) (noting that "the treatment was conservative: medication, including trigger point injections, and physical therapy").

Plaintiff's reliance on Dr. Simon's January 2018 examination findings do not militate a different result. *Plaintiff's Memorandum of Law*, ECF No. 19, pp. 19–20. As an initial matter, it is not clear that the 2018 examination was "contemporaneous" with Dr. Simon's March 2020 and June 2020 opinions. Moreover, it is Plaintiff, who accuses the ALJ of cherry picking and mischaracterizing the evidence, who selectively cites to findings from the January 2018 examination. For example, that examination also reveals, *inter alia*, that the lumbosacral spine was normal, the cervical spine was normal with full range of motion, and that extremities had no edema and a full range of motion, R. 389, and Plaintiff denied, *inter alia*, decreased sensation in extremities, painful extremities, ankle pain or swelling, foot numbness or difficulty walking, difficulty balancing, gait abnormality, low back pain, tingling/numbness, or loss of strength, R. 385. In any event, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler*, 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton*, 131 F. App'x at 880 ("When 'presented

with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). In short, Plaintiff has not shown that the ALJ mischaracterized the record or otherwise erred in considering the supportability of Dr. Simon's opinions.

Turning to the consistency factor, Plaintiff argues that the ALJ erred in finding that Dr. Simon's opinions were "inconsistent with other objective evidence in the record" and that "imaging results showed no major abnormalities." *Plaintiff's Memorandum of Law*, ECF No. 19, p. 20 (citing R. 28) (internal quotation marks omitted). Plaintiff contends that, in fact, the 2016 and 2020 MRIs of the lumbar spine "revealed numerous abnormalities." *Id*. (citing R. 406, 639). Plaintiff complains that the ALJ focused on "normal examination findings[,]" but "he fails to discuss the highly-probative imaging of Plaintiff's lumbar spine," thus precluding judicial review. *Id*. at 21. Plaintiff further argues that substantial evidence does not support the ALJ's decision because it relies on a mischaracterization of the evidence. *Id*. at 21–22. Plaintiff also insists that the ALJ's errors were not harmless. *Id*. at 22–23.

The Court is not persuaded that this issue requires remand. As an initial matter, the ALJ expressly discussed both the 2016 and 2020 MRIs of Plaintiff's he lumbar spine. R. 22 ("A MRI of her lumbar spine from August 7, 2016, showed *stable* posterior disc bulge at L5-S1, asymmetrically greater in severity on the right than the left, with persistent resultant abutment of the right S1 nerve root in the canal []. It also showed narrowing of the inferior recess of the right neural foramen, but the remaining disc levels were *unremarkable* []. There was also *no* central spinal canal stenosis in the lumbar spine[.]") (citations omitted), 23 ("A MRI of her lumbar spine from January 30, 2020, showed *only mild* diffusely bulging disc at L5-S1 probably *without significant interval change* []. It also showed *only mild* bilateral foraminal narrowing noted at

L5-S1 but *normal* conus medullaris[.]") (citations omitted) (emphasis added). The ALJ found

that this imaging showed "no *major* abnormalities." R. 22 (emphasis added), 23 (same), 28

(same). In other words, the ALJ specifically discussed the MRI findings, which he acknowledged

included some abnormalities, but the ALJ also found that these abnormalities were not "major."

*Id*. The Court cannot say, based on a fair reading of the specific language from the 2016 and

2020 MRIs of the lumbar spine detailed earlier in this *Opinion and Order*, that the ALJ

mischaracterized this evidence. *See* R. 406 (containing 2016 MRI of the lumbar spine reflecting,

*inter alia*, "Stable posterior disc bulge at L5-S1, asymmetrically greater in severity on the right

than the left, [illegible] persistent resultant abutment of the right S1 nerve root in the canal and

narrowing of the inferior recess of the right neural foramen" and that "remaining lumbar disc

levels appear unremarkable"; "no central spine canal stenosis"; "preserved" lumbar facet joints;

"[l]umbar vertebral body height and signal are maintained" and that "[t]he conus is normal in

position and configuration"), 402 (containing 2020 MRI of the lumbar spine reflecting, *inter

alia*, "[m]ild diffusely bulging disc at L5-S1 probably without significant interval change. Mild

bilateral foraminal narrowing also noted at L5-S1" and "[t]he conus medullaris is within normal

limits").

  Moreover, this imaging was but one factor that the ALJ considered when finding that Dr.

Simon's opinions were inconsistent with other record evidence. R. 28. For example, the ALJ also

found that this physician's extreme limitations were inconsistent with the "mostly normal review

of her musculoskeletal systems during other examinations" conducted by Dr. Veknis and Dr.

Aye. *Id*.; *see also Cartwright v. Kijakazi*, No. CV 21-1731, 2023 WL 24071, at *1 n.1 (W.D. Pa.

Jan. 3, 2023) (rejecting Plaintiff's challenge to finding a medical opinion inconsistent with other

examiner's findings where the "more restrictive opined limitations to, *e.g.*, 'standing 2 hours and

25

walking one hour in [an] eight[-]hour workday' were inconsistent with other sources' findings of 'no muscle atrophy, no neurologic deficit, normal sensation, normal musculoskeletal range of motion including the back and extremities, normal coordination, no motor deficit, normal muscle tone, a normal gait, and normal heel and toe walking'"); *Aponte v. Kijakazi*, No. CV 20-5008, 2021 WL 4963545, at *7 (E.D. Pa. Oct. 25, 2021) (finding that substantial evidence supported the ALJ's finding that a treating opinion was not persuasive under 20 C.F.R. § 404.1520c because it was inconsistent with, *inter alia*, mild findings on "multiple physical examinations" and mild radiographic findings). The ALJ in this case also noted that Dr. Simon's extreme limitations were inconsistent with Plaintiff's own reports that her pain symptoms were stable or were adequately controlled. R. 28; *see also L. L. Y. v. Comm'r of Soc. Sec. Admin.*, No. CV 22-1710, 2023 WL 1883348, at *4 (D.N.J. Feb. 9, 2023) (finding that the ALJ sufficiently explained why he did not find a medical opinion persuasive where the ALJ considered, *inter alia*, that the claimant's own testimony contradicted such an opinion). Accordingly, the Court cannot conclude that the ALJ erred in finding that Dr. Simon's opinions were inconsistent other record evidence.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does his consideration of Dr. Simon's opinions.

## VI.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Acting Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date:  April 30, 2025                          *s/Norah McCann King*
                                               NORAH McCANN KING
                                               UNITED STATES MAGISTRATE JUDGE